UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                      Case No. 17-mc-50667

v.

                                      HON. MARK A. GOLDSMITH

RAMESS NAKHLEH,

    Defendant.

_____/

## OPINION AND ORDER AFFIRMING DEFENDANT'S CONVICTION AND SENTENCE

This matter is before the Court on Defendant Ramess Nakhleh's appeal from his misdemeanor conviction. The issues were fully briefed. Because the facts and arguments are adequately presented in the briefs and record and because oral argument will not significantly aid the decisional process, the appeal will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. App. P. 34(a)(2)(C); Fed. R. Crim. P. 58(g)(2)(D). For the reasons discussed below, the Court affirms Defendant's conviction for disorderly conduct.

### I. FACTS AND PROCEDURAL HISTORY

On July 8, 2016, Defendant Ramess Nakhleh went to the Highland Park Post Office to mail a package. When Nakhleh arrived at the post office, the box was unsealed; when a postal worker told Nakhleh that he would have to seal the box himself, Nakhleh went to a nearby store to buy tape. When he returned to the post office, Nakhleh asked a second postal worker to seal the box for him. The worker refused, and Nakhleh sealed it himself. The box could still not be processed, however, because the shipping label was missing. The label was inside the box, so Nakhleh reopened the box and retrieved it. Nakhleh did not want to affix the label, so he asked the postal

1

worker to do so; she refused and another customer volunteered to place the label on the box. With the process of preparing the box for shipment completed, the postal worker processed the package and Nakhleh left the post office.

Nakhleh's absence from the post office was short-lived. While on his way home, Nakhleh reflected on the various exchanges at the post office and became upset at his treatment by the postal workers. He returned to the post office, bringing an audio recorder with him to record his conversations with the postal employees. He approached the second postal worker and asked for the box back, explaining that he had left something in it. The worker informed him that she was not permitted to return the box for any reason. Nakhleh was apparently upset with this response; one worker testified that he became loud, rude, and irate, while another testified that he was being belligerent.

The police arrived, and Nakhleh explained that he simply wanted the box back because he wanted to retrieve something from it. The police asked what he needed to get out of it, to which Nakhleh replied, "What if it's a bomb?" After a follow-up question, Nakhleh repeated the question: "What if it's a bomb?" The police evacuated the post office, and ultimately the post office was closed for two hours. During that time, a postal inspector trained in the identification of dangerous or suspicious items x-rayed the package and determined that it did not contain a bomb.

Nakhleh was charged with disorderly conduct in a post office. See 39 C.F.R. § 232.1(e). Following trial, Magistrate Judge Grand determined that the prosecution had shown beyond a reasonable doubt that Nakhleh's conduct created a noise that was loud and unusual and that he disturbed the employees from performing their duties. Magistrate Judge Grand further found that Nakhleh's conduct set off the chain of events that impeded and disturbed the general public in use

2

of the post office. Accordingly, Nakhleh was convicted of disorderly conduct. 18 U.S.C. § 3061(c)(4)(B). Nakhleh was sentenced to six months' probation, which included attendance at anger-management classes, and to pay a $1,000 fine.

Nakhleh now brings this appeal. He argues (i) that he did not make a "loud and unusual" noise as required by the regulation, as he was merely speaking in his normal voice; (ii) that the evidence was insufficient to support the conviction; (iii) that the magistrate judge erred in crediting testimony over a contemporaneous audio recording; and (iv) that the sentence imposed was unreasonable. For the reasons that follow, the Court upholds Defendant's conviction and sentence.

## II. STANDARD OF REVIEW

The scope of review on an appeal to the district court from a conviction in front of a magistrate judge is the same as the scope of review on an appeal to the court of appeals from a conviction in a district court. Fed. R. Crim. P. 58(g)(2)(D). Accordingly, the Court will review the instant question of statutory interpretation de novo. United States v. Lumbard, 706 F.3d 716, 720 (6th Cir. 2013). Regarding the sufficiency of the evidence supporting the conviction, the Court is tasked with reviewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could find the elements of the crime beyond a reasonable doubt." United States v. Gooch, 850 F.3d 285, 288 (6th Cir. 2017) (emphasis in original) (internal quotation marks omitted).

Nakhleh also disputes an evidentiary ruling made by the magistrate judge. An "abuse of discretion is the proper standard of review" of a trial court's evidentiary rulings. General Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997). An abuse of discretion occurs only when a reviewing court has "a definite and firm conviction that the trial court committed a clear error in judgment." United States v. Boothe, 335 F.3d 522, 526 (6th Cir. 2003) (internal quotation marks omitted).

Nakhleh also argues that the sentence imposed is substantively unreasonable. This objection was not raised in the trial court. Typically, if a defendant has not raised a reasonableness objection in the trial court, a reviewing court will apply a plain-error standard to such a challenge. See Lumbard, 706 F.3d at 720. In the Sixth Circuit, however, trial judges are required, after handing down a sentence, to ask the parties whether there are any objections to the sentence pronounced that have not been previously raised. See United States v. Bostic, 371 F.3d 865, 872 (6th Cir. 2004). In this case, after handing down the sentence, the magistrate judge merely asked "[i]s there anything further then?" Trial Tr. at 127 (Dkt. 2). This question is not sufficient to satisfy the Bostic test. See United States v. Camacho-Arellano, 614 F.3d 244, 247 (6th Cir. 2010) (finding that asking defense counsel if there was "anything else" did not constitute asking the Bostic question). Accordingly, despite the lack of objection in the trial court, because the Bostic question was not asked, the Court will apply an abuse-of-discretion standard to the sentence. United States v. Daniels, 641 F. App'x 461, 466-468 (6th Cir. 2016).

### III. ANALYSIS

**A. "Loud and Unusual Noise"**

The magistrate judge determined that Nakhleh violated 39 C.F.R. § 232.1(e), the violation of which is made criminal by 18 U.S.C. § 3061(c)(4)(B). The regulation prohibits disturbances in a post office:

> Disorderly conduct, or conduct which creates loud and unusual noise, or which impedes ingress to or egress from post offices, or otherwise obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.

4

Unsurprisingly, the parties disagree regarding whether Nakhleh was properly convicted for creating a loud and unusual noise. Nakhleh focuses his argument on the term "unusual," claiming that he cannot create a "loud and unusual noise" when talking in his normal speaking voice. The Government argues just the opposite—that "unusual" means unusual for the environment, rather than unusual for the speaker.

The disagreement between the parties essentially comes down to the question whether the regulation prohibits subjectively unusual noises, i.e. noises that are unusual for the person making them, or objectively unusual noises, i.e. noises that are unusual for the surroundings.

The Government cites two cases that support the objective standard, although both arise out of different regulations in different contexts. In United States v. Agront, 773 F.3d 192 (9th Cir. 2014), the Ninth Circuit heard an appeal from a conviction for violation of 38 C.F.R. § 1.218(b)(11), which prohibits the creation of a "loud, boisterous, and unusual noise" in a VA facility. In describing how a person would know that he or she was creating such a noise, the Ninth Circuit explained that a "person of common intelligence would understand that the prohibition on 'loud, boisterous, and unusual noise' is in relation to the environment of a VA facility as opposed to a baseball stadium or train station." Id. at 197. Ultimately, the panel concluded that conduct that violates the regulation is "conduct sufficiently 'loud, boisterous, and unusual' that it would tend to disturb the normal operation of a VA facility." Id.

This concept is borrowed from the Supreme Court's decision in Grayned v. City of Rockford, 408 U.S. 104 (1972), also cited by the Government, in which the Court upheld a city ordinance that prohibited picketing or demonstrating within 150 feet of a school while school was in session. Id. at 107. There, the Court commented that "prohibited disturbances are easily measured by their impact on the normal activities of the school." Id. at 112. The prevailing rule

from these cases is that when a regulation exists prohibiting disturbances on or near government property, the level of disturbance prohibited is relative to the typical, objectively-expected behavior that would be expected at that property. In this context, such a rule would dictate that when a regulation prohibits loud or unusual noises at a post office, the conduct prohibited is conduct that goes beyond what is objectively acceptable at a post office.

The dictionary definition of "unusual" supports the contention that noises that disrupt the typical operation of a post office are unusual noises in this context. When a term is undefined in a statute or regulation, as "unusual" is here, courts should assign the term its ordinary meaning, with dictionaries being "a good place to start." United States v. Zabawa, 719 F.3d 555, 559 (6th Cir. 2013). One standard dictionary defines "unusual" as "not usual, common or ordinary." Random House College Dictionary, Revised Edition (1979). In turn, "usual" is defined as "expected by reason of previous experience with the same occurrence, situation, person, etc." Id. So, in the context of a post office, a noise is unusual if it is not expected by reason of previous experience within a post office. Consistent with the above authorities, this experience must be objective, rather than subjective.

Nakhleh argues that such a finding violates two canons of statutory interpretation: the rule of constitutional avoidance and the rule of lenity. First, Nakhleh claims that an objective interpretation of the regulation is vague, such that it opens the door to arbitrary and discriminatory enforcement and, therefore, runs afoul of the Due Process Clause. See Def's Br. at 11-12. Nakhleh argues that the Court must adopt his proposed subjective interpretation, because "ambiguous statutory language" should "be construed to avoid serious constitutional doubts." F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 516 (2009).

Even assuming that the statute is equally susceptible to two constructions, see United States v. Oakland Cannabis Buyer's Cooperative, 532 U.S. 483, 494 (2001) ("[T]he canon of constitutional avoidance has no application in the absence of statutory ambiguity."), Nakhleh's argument fails, because an objective interpretation of "loud and unusual noise" would not lead to arbitrary and discriminatory enforcement. The Ninth Circuit considered a similar argument in Agront and concluded that, despite the absence of a definition for "loud, boisterous, and unusual noise," the "requisite quantum of noise is found by looking to the context in which the regulation applies." Agront, 773 F.3d at 197. The same rationale applies here. Ordinary people can and do understand what conduct is usual in a post office, and thus also understand what conduct is unusual in a post office. The regulation in question provides sufficient context, such that it is not indeterminable whether a "loud and unusual noise" has been made. See United States v. Williams, 553 U.S. 285, 306 (2008) ("Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.") (emphasis added). Because the regulation does not raise constitutional issues, the canon of constitutional avoidance does not apply.

Nakhleh also claims that his conviction violates the rule of lenity, which holds that ambiguity in criminal statutes should be resolved in the defendant's favor. See Skilling v. United States, 561 U.S. 358, 411 (2010) ("Further dispelling doubt on this point is the familiar principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.") (internal quotation marks omitted).

The rule only applies, however, when the statute "contains a grievous ambiguity or uncertainty," and only if "the Court can make no more than a guess as to what Congress intended."

7

Muscarello v. United States, 524 U.S. 125, 138-139 (1998) (internal quotation marks omitted). That certainly is not the case here, and the text of the regulation belies Nakhleh's argument. The regulation prohibits disorderly conduct, defined as "conduct which creates loud and unusual noise . . . or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property." 39 C.F.R § 232.1(e). The inclusion of the word "otherwise" means that the "loud and unusual noise" fits within one of the two classes of conduct later provided in the regulation, whether that is impeding or disturbing employees, or impeding or disturbing the general public. That context lets both courts and potential defendants know the scope of the provision and precludes any argument that the regulation is ambiguous.

### B. Sufficiency of the Evidence

Having concluded that the regulation applies an objective standard to "loud and unusual noise," the Court must next determine whether the evidence supports Magistrate Judge Grand's verdict that Nakhleh's conduct created an objectively loud and unusual noise in the context of a post office. Examination of the regulation in question reveals four elements for the charge of a loud and unusual noise: the defendant (1) creates a noise that is (2) loud and (3) unusual and (4) either (i) tends to impede or disturb the public employees in the performance of their duties, or (ii) impedes or disturbs the general public in transacting business or obtaining the services provided on property.[1]

---

[1] The inclusion of three "otherwises" in the regulation leads to parsing the regulation into the elements enumerated above. As a reminder, the regulation reads as follows:

> Disorderly conduct, or conduct which creates loud and unusual noise, or which impedes ingress to or egress from post offices, or otherwise obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited. (39 C.F.R. § 232.1(e)).

8

The first two elements are not in dispute. Nakhleh clearly created a noise, and that noise was obviously loud—indeed, Nakhleh's entire argument is premised on the contention that he is loud. For the third element, the Court examines what conduct creates noise that is unusual at a post office, and does so by exploring the level of decorum that is expected at a post office. Typically, when people enter a post office, they might buy stamps, or prepare a package, or drop mail in the mail slot, or check a P.O. box, or even get straight in line to talk to a postal worker. After they complete their business, they typically leave. There might be a dispute regarding payment or how long it will take a package to be delivered and voices might be raised, but dealing with such a dispute is, perhaps unfortunately, one of the duties of a postal worker.

What is undoubtedly <u>not</u> one of the duties of a postal worker is dealing with a customer, already having left the post office just to return minutes later, demanding that his package be returned in a raised voice, especially after that customer has been told that the package has already been processed and cannot be returned. It is <u>not</u> one of the duties of a postal worker to feel threatened by a customer to the extent that she feels she has to call the police. These circumstances were established by the testimony of Tamika Stringer, one of the workers at the post office that day. <u>See</u> 5/1/17 Trial Tr. at 37-38. The conduct created a noise that was certainly unusual to the extent that it caused Ms. Stringer to feel the need to have her manager call the police when she

---

As noted above, the use of "otherwise" dictates that the "loud and unusual noise" must also fit within at least one of those categories. <u>See</u> <u>Agront</u>, 773 F.3d at 198 ("Use of the term 'otherwise' indicates that, in order to be prohibited conduct, 'loud and unusual noise' also would need to rise to the level of impeding or disrupting normal VA operations."). That being said, it appears from the text of the regulation that the addition of "which" separates the various classes of conduct that are prohibited as disorderly conduct. Thus, the first "otherwise" does not announce a prohibited class of conduct, but rather modifies "which impedes ingress to or egress from post offices." Put another way, there are four different classes of conduct which can be charged as disorderly conduct in a post office: (1) loud and unusual noise; (2) impeding ingress or egress; (3) impeding or disturbing employees; and (4) impeding or disturbing the general public. In order to be convicted under either of the first two classes of conduct, a defendant must <u>also</u> fit within one or both of the last two.

9

could have been assisting the other customers in line. See id. at 38-39. Nakhleh's disturbance went beyond what is objectively usual at a post office, and thus the third element is fulfilled.

The last element can be satisfied in a number of ways. The prosecution is required to prove either that Nakhleh's conduct tended to impede or disturb the public employees in the performance of their duties, or impeded or disturbed the general public in transacting business or obtaining the services provided on property. The prosecution proved both. As noted by Magistrate Judge Grand, the conduct that created the loud and unusual noise "prevented workers from servicing other customers." 5/1/17 Trial Tr. at 108. Even without considering the subsequent closure of the post office, there is evidence that Nakhleh both disturbed the postal workers in the performance of their duties, i.e. servicing customers, and impeded, albeit temporarily, the general public in transacting business. See id. at 40 (testimony that the postal workers "couldn't serve the customers"). Accordingly, the final element is satisfied.

For these reasons, there was sufficient evidence for the magistrate judge to convict Mr. Nakhleh of violating 39 C.F.R. § 232.1(e).

### C. Audio Recording

Nakhleh next argues that the magistrate judge clearly erred by crediting the testimony of the postal workers over the contemporaneous audio recording that he recorded. Nakhleh contends that the tape reveals that he did not yell, was not belligerent, was not rude, and was not speaking in an unusual manner, and that this extrinsic evidence contradicts the testimony at trial. See Brooks v. Tennessee, 626 F.3d 878, 897 (6th Cir. 2010). The Government observes that the recording documents the events before and after, but not during, the conduct at issue. Specifically, the police had already been called when the recording began, and the tape did not include conduct that Nakhleh himself testified occurred, such as the bomb reference.

This Court will not disturb the findings of the magistrate judge.  This is due, in part, to Nakhleh's failure to provide to the Court a copy of the audio recording.  Thus, even if the Court were so inclined, it is impossible for the Court to independently examine the validity of his argument.  Cf. Brown v. Konteh, 567 F.3d 191, 212 (6th Cir. 2009) ("[I]ssues not adequately developed or argued in the appellate briefs are deemed abandoned and thus not addressed by this court.").  Simply put, Nakhleh did not provide the Court with the piece of evidence on which he relies, and so the Court is unable to evaluate this claim.

That being said, on the record provided, it is clear that the magistrate judge did not abuse the discretion provided in valuing the testimony of the witness over the audio recording.  The magistrate judge observed that the recording began after the police had already been called, and that the witness' testimony filled in the gaps of what happened before that time.  Given that, it could not possibly be said that the magistrate judge made an error in judgment, let alone that the Court is left with "a definite and firm conviction that the trial court committed a clear error in judgment."  Boothe, 335 F.3d at 526.  Accordingly, the Court determines that this argument is meritless.

**D.  Sentence**

Finally, Nakhleh argues that the sentenced imposed was unreasonable.  On this point, Nakhleh contends that his sentence—six months' probation (including anger-management classes) and a $1,000 fine—constitutes an abuse of discretion.  Nakhleh seems particularly bothered with the requirement that he attend anger-management classes, arguing that the magistrate judge ordered attendance without any input from the probation department, such that the only evidence that anger-management classes were necessary arose from the event in question and Nakhleh's behavior at trial.

The sentence imposed clearly is not an abuse of discretion. The circumstances surrounding this case, in which Nakhleh returned to the post office because he was so perturbed by the postal workers' perceived slight, make it a reasonable conclusion that Nakhleh might benefit from anger-management classes. Judges are tasked with considering "correctional treatment in the most effective manner" when fashioning sentences. 18 U.S.C. § 3553(a)(2)(D). Considering Nakhleh's behavior here, it could not be said that the magistrate judge abused his discretion in ordering that he attend anger-management classes. Accordingly, this issue too is meritless.

### E. Conclusion

For these reasons, the Court affirms Mr. Nakhleh's conviction and sentence.

SO ORDERED.

Dated: January 12, 2018  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 12, 2018.

s/Karri Sandusky  
Case Manager